## HUTZLER ET UX. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 175, October Term, 1954.]

*Decided June 13, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Edwin J. Wolfe,* with whom was *W. Walter Fernandis* on the brief, for appellants.

*Donald N. Rothman,* with whom were *Gordon, Feinblatt & Rothman* on the brief for the appellee, The Shelburne Park Apartments, Inc.

HAMMOND, J., delivered the opinion of the Court.

The Board of Municipal and Zoning Appeals of Baltimore held, where a single lot lay all in a residential use district and all in an E area district, that the fact that the front part of the lot was in a one and one-half times height district, while the rear part was in a forty-foot height district, did not preclude the use of the part of the lot in the forty-foot height district as the required rear yard for an apartment house to be erected entirely on the part of the lot in the one and one-half times height district. The Baltimore City Court affirmed, and neighbors who had opposed the granting of the permit for the erection of the apartment house, have appealed to this Court, saying that the applicable law was misconstrued.

Ordinance No. 711 of the Mayor and City Council of Baltimore, approved May 21, 1953, recites in Section 1 that for the purpose of promoting the public health, security, morals and general welfare of the community, the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards and other open spaces, the density of population and location and use of buildings, structures and land for trade, industry, residence or other purposes, are regulated and restricted as by said ordinance provided.

Section 2 of the ordinance provides that: "For the purpose set forth in Section 1" and considering the various enumerated factors, including among other things "* * * the height and area districts and regulations established by this ordinance, as affected by the use of land and buildings in each of the use districts hereinafter mentioned, the use of land and buildings is hereby regulated and restricted, and the City of Baltimore is divided into five classes of use districts, namely * * * as shown on the use district map which accompanies this ordinance and is hereby declared to be a part of this ordinance * * *."

Section 18 of the ordinance provides that: "For the purpose set forth in Section 1" and considering enumerated factors, including "* * * the use and area districts and regulations established by the ordinance, as affected by the height of buildings in each of the height districts hereinafter mentioned, the height of buildings is hereby regulated and restricted, and the City of Baltimore is divided into five classes of height districts, namely * * * as shown on the height and area districts map which accompanies this ordinance and which is hereby declared to be part of this ordinance."

Section 22 of the ordinance provides that: "For the purpose set forth in Section 1 * * *" of the ordinance, "and considering * * * the use and height districts and regulations established by this ordinance, as affected by the percentage of lot occupied, by the size and location

of yards and other open spaces, and by the density of population, in each of the area districts hereinafter mentioned, the percentage of lot that may be occupied, the size and location of yards and other open spaces and the density of population are hereby regulated and restricted, and the City of Baltimore is divided into eight classes of area districts, namely * * * as shown on the height and area district map which accompanies this ordinance and which is hereby declared to be part of this ordinance."

It is apparent that the purposes of the ordinance are accomplished largely through these classes of use, height and area districts which are complementary in operation and effect, impinging as they do in varying combinations on the individual lots which together make up the City of Baltimore.

Shelburne Park Apartments, Inc., an appellee (who will be called "the appellee"), is the owner of a rectangular lot on the southeast corner of Park Heights Avenue and Shelburne Road in Baltimore, having a frontage on Park Heights Avenue of two hundred feet, with a depth of three hundred eighty feet. The entire lot is in a residential use-E area district, but the front portion of the lot—a frontage of two hundred feet on Park Heights Avenue, with a depth of one hundred seventy feet—is in a one and one-half times height district, and the rear portion—two hundred feet by two hundred ten feet—is in a forty-foot height district.

Apartment houses are permitted in a residential use district. In an E area district, the maximum percentage of the lot which may be occupied by a building is thirty per cent (unless the lot is a corner lot, in which case it is forty per cent), the minimum required depth of a rear yard is twenty-six feet and the maximum number of families which may be housed is sixteen to the acre. In a one and one-half times height district, no building may be constructed or increased in height to a height in excess of one and one-half times the width of the street, with an additional three feet for each foot that

the building sets back from the street, with upper limits of nine stories and one hundred five feet. In a forty foot height district, no building may be constructed or increased in height to a height in excess of forty feet.

The appellee proposes to build a nine story, one hundred feet high apartment house entirely in the one and one-half times height district, to be one hundred sixty-one feet by one hundred thirty-one feet, irregular in shape, to contain sixty-two apartments with parking space for approximately sixty-eight cars on the rear two hundred ten feet of the lot. It would have a front yard forty feet deep, a side yard fourteen feet wide along Shelburne Road, and a side yard twenty-five feet wide on the south side. All of the rear yard would be in the forty foot height district, since the back of the building would be just at the boundary line between the two height districts. The number of families to be housed in the apartment house was obviously in violation of the general provisions of the zoning law, so the appellee sought and obtained a special permit from the Board of Municipal and Zoning Appeals, under the provisions of Section 32 of the ordinance. This provides: "The Board of Municipal and Zoning Appeals may, after public notice and hearing, in its discretion, in a specific case, and subject to the provisions, guides and standards set forth in Section 35(j), and provided front, side, rear yard, percentage of lot requirements and the requirements of sub-section 25B are complied with, permit: (a) In E and F Area Districts, which are in one and one-half times height districts, an apartment house with the maximum number of families permitted in a C Area District." The ordinance provides that in a C area district, the maximum number of families that may be housed on a lot shall be not more than eighty families per acre. The Board took the view that it was authorized to permit the erection of a nine story apartment house to house sixty-two families on the portion of the lot which was in one and one-half times height district. The area of the remainder of the lot, in the forty-foot

height district was not taken into account in arriving at the figure of 62 families. The Board found that all of the conditions specified in Section 32 had been complied with and it gave the requisite consideration to the requirements of Section 35(j), and found that the proposed building would not create hazards from fire or disease and would not menace the public health, security or morals. It gave consideration to sub-sections (a) to (n) of Section 22 of the ordinance as far as pertinent. The project was approved by the Planning Commission of Baltimore City and by all of the appropriate agencies, such as the Health Department, Fire Department and Police Department. The appellant no longer makes any point that the Board exceeded its powers or abused its discretion in authorizing the erection of the proposed building if it is permissible, under the law, to utilize the portion of the lot which is in the forty-foot height district as the rear yard for the apartment building in the one and one-half times height district. As has been noted, the ordinance requires a twenty-six foot rear yard for all buildings in a residential-E area district. Unless the twenty-six feet is provided by that portion of the lot which is in the forty-foot height district, there would be no rear yard to the building.

We think the action of the Board was within the letter and spirit of the zoning laws. Section 48(b) of the ordinance defines a lot as "* * * a parcel of land now or hereafter laid out and occupied by one building and the accessory buildings or uses customarily or necessarily incident to it, including such open spaces as are required by this ordinance." The applicable provisions of the ordinance, other than the height provisions, apply to all of the lot alike since all of it is in the same use and area districts. An apartment house could be built on any part of it; if built on the rear portion, its height would be limited to forty feet, and if on the front portion, the height would be limited to nine stories, and one hundred five feet. In each case, the maximum number of families to occupy the apartment house would be

sixteen to the acre unless the elastic provisions of Section 32 were invoked by the Board in its discretion; then the Board, under paragraph (a) of that section could, as it did here, authorize eighty families to the acre in one and one-half times height district, or under paragraph (c) authorize a four-story apartment house to house forty families to the acre on the portion of the lot which is in the forty-foot height district. No matter on what part of the lot the building was placed, the side and rear yard requirements would be the same. No matter how high—one story or nine stories—the side and rear yard requirements would be the same. Ordinance No. 305 of the Mayor and City Council, approved June 14, 1948, directs that no permit for a residential dwelling unit shall be granted until the plans show at least one parking space for each dwelling unit in the dwelling building. Such space must be in a building or on land not over three hundred feet from the building. The appellee proposes to use the rear two hundred ten feet of the lot (which includes the required twenty-six feet) for parking. Parking space would be necessary whether the apartment house were on the front or rear part of the lot. The provisions of the ordinance, as to the percentage of the lot which may be built on applies to both the front and rear parts of the lot.

None of these requirements is tied in to the height provisions. A lot, as defined, includes "* * * such open spaces as are required by this ordinance" and the fact that, at the rear of the building, the twenty-six feet of ground which is part of the same lot, is in a different height district, does not prevent that twenty-six feet from being considered properly as the rear yard of the building required by the ordinance. The purposes of the ordinance to provide open spaces and light and air, and to regulate density of population are fully met. So too are its requirements and restrictions as to the height of the buildings. The appellant argues that at some time in the future the appellee, or a successor in title, may sell off some or all of the rear two hundred ten feet, and

thus fail to comply with the requirements as to parking space for occupants of the apartment house and as to the twenty-six foot rear yard requirement. The same argument can be made as to the open forty feet in the front, or the side yards. Again if the building were so planned that all of the twenty-six feet of rear yard were to be in the one and one-half times height district the same contention could be made as to it and as to the parking space. Clearly, the ordinance does not permit such evasions of its terms. Section 34 provides that: "In case * * * any building, structure, or land is used, in violation of this ordinance, the Zoning Commissioner, in addition to other remedies, may institute any appropriate actions or proceedings to prevent such unlawful * * * use, to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any act, conduct, business or use, in violation of this ordinance in or about such premises." Adjacent property owners would undoubtedly have rights and remedies if the unlikely events envisaged by the appellant should come about or be threatened. Further, Section 42 of the ordinance provides that if a building or land or its use or occupancy "are found not to conform to the requirements of this ordinance or the conditions of an existing certificate of occupany * * *", the Zoning Commissioner shall notify the owner of the land to so conform, and unless the land or building is made to conform to the ordinance, the Zoning Commissioner "shall order the use or the occupancy of the building or land modified or the building or land vacated * * * until its condition is made to conform to the requirements of this ordinance, at which time a certificate of occupancy shall be issued as herein provided." Section 46 provides that any person who constructs, alters, changes or uses any building or land, or changes the use of any land or building in violation of the ordinance, or who fails to obtain the permit or certificate of occupancy required by the ordinance "* * * shall be guilty of a misdemanor and, upon conviction in any court of

competent jurisdiction, shall be fined not less than twenty-five nor more than two hundred dollars." Each day such violation is continued is made a separate offense. It is plain that the ordinance contains sanctions that would effectively prevent what the appellants seem to fear.

In support of their contention that the rear part of the lot cannot be considered the yard of the building on the front part appellants cite cases from other jurisdictions. These all involve situations in which a part of a lot was in one use district and the rest in another use district, and it was sought to devote one part to a use forbidden in the district of its location by tacking it on to the other part, in the other use district, wherein the use sought was permitted. In each of the cases, the use to which the accessory lot was to be put, would have violated the requirements of the district in which that portion of the lot was located. The cases therefore are to be distinguished since that is not the situation in the case before us.

We think the action of the Board of Municipal and Zoning Appeals in granting the permit for the apartment house was proper and so was rightly affirmed by the court below.

*Order affirmed, with costs.*