**FOREST CITY, INC.**

v.

**Henry PAYSON.**

Supreme Judicial Court of Maine.

March 7, 1968.

Julius Greenstein, and Richard A. Davis, Portland, for plaintiff.

Louis A. Wood, John A. Mitchell, Louis Bernstein, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On appeal.

The plaintiff is the owner of property in a R-6 Residential Zone in the City of Portland. The defendant owns property which extends in a northeasterly direction 300 feet from the northeasterly side line of Forest Avenue to the southwesterly side line of plaintiff's property which it abuts for at least part of its width. The first 250 feet of this parcel is within a B-2 Business Zone.

The last fifty feet of it is within the R-6 Residential Zone which the plaintiff also occupies. The last thirty feet of defendant's land is subject to a right of way owned by the plaintiff in common with others running along the most northeasterly edge of defendant's land from Dartmouth Street (which runs at right angles to Forest Avenue) a distance of 584 feet.

The Building Inspector of the City of Portland issued defendant a foundation permit for a proposed business building to be constructed by the defendant on his lot. This building would abut the southwesterly side of the right of way and thus would extend twenty feet into the R-6 zone. The plaintiff sought a temporary and permanent injunction against this construction. A hearing was had before a single justice in the Superior Court. The justice denied the injunctions and the parties are here on the plaintiff's appeal from his decision, on an agreed statement of facts. Our problem is that of construction of several applicable sections of the city zoning ordinance.

The pertinent parts of these sections follow:

Section 9 C(b):

"b. The dimensional requirements for non-residential and accessory uses shall be as follows:

*"Minimum rear yards*

"1. Not required except where the rear line abuts a Residence Zone, in which case they shall be 20 feet."

Section 20 B:

*"Extension of zone lines*

"B. Where a zone boundary line divides a lot in a single or joint ownership of record at the time such line is established, the provisions of this Ordinance for the less restricted portion of such lot shall extend not more than thirty feet into the more restricted portion provided that the lot has at least 20 feet of street frontage in the less restricted zone when taken together with adjacent premises which are under the same or equivalent ownership or control. If such boundary line divides a Business or Industrial Zone from a Residence Zone, no frontage on a street other than the principal business street in the less restricted zone may be taken into consideration in connection with the right herein granted."

Section 27:

"The following words shall be defined as set forth below for use in this Ordinance. Definitions set forth in the Building Code of the City of Portland shall apply to words not herein defined:

\*　　\*　　\*　　\*　　\*　　\*

*"Lot area*　The area of land enclosed within the boundary lines of a lot.

*"Lot*　Except when reference is made herein to a lot or record, a lot is a single tract of land located within a single block which at the time of filing for a building permit or certificate of occupancy is designated by its owner or developer as a tract to be used, developed, or built upon as a unit under single ownership or control.

\*　　\*　　\*　　\*　　\*　　\*

*"Yard*　A space on a lot which is required by this Ordinance to be maintained open, unoccupied and unobstructed between lot lines and any structure, except as permitted in this Ordinance. In determining the front, rear, or side of any accessory building, the orientation of the principal building shall be controlling.

\*　　\*　　\*　　\*　　\*　　\*

*"Yard, rear*　A yard adjoining the rear lot line, extending between side lot lines the depth of which shall be the least distance between the rear lot line and the rear of any structure."

It is agreed that Section 9 C(b) requires defendant's building to have a rear yard twenty feet in depth. It is not disputed that Section 20 B extends the uses permitted in the B-2 zone thirty feet into the

R-6 zone in so far as defendant's property is concerned. However, defendant's lot actually extends into the R-6 zone fifty feet. The first issue presented to us is whether the twenty foot rear yard requirement of Section 9 C(b) must be satisfied out of that part of defendant's lot which lies within the B-2 zone, as extended, or whether it may lie in the R-6 zone.

■ Persuasive arguments can be advanced concerning the desirability of maintaining a straight zoning line, free from areas where lots used for business purposes jut into a residential zone, but these considerations fail to support an inference that such was the intention of the zoning ordinance. In fact, the provisions of Section 20 B create just such intrusions to the extent of thirty feet. It appears that this section represents a compromise between the ordinance's apparent recognition of the value of regular zone boundaries and a desire to permit land owners to enjoy the use of their entire properties as single units.

■ There is in the zoning ordinance a complete absence of any expression of intent that the rear yard must be within the business zone. On the contrary the language used strongly suggests otherwise. The description of a "lot" as being "a single tract of land located within a single block" is significant for the absence of any attempt to limit a lot by zone lines. The definition of "yard" situates it between "lot lines" and the structure. That of "rear yard" uses the words "rear lot line" twice in establishing its location.

■ A zoning ordinance, like any other statute which is in derogation of the common law, must be strictly construed.

"The restrictions of zoning statutes and zoning ordinances authorized by statute, are in derogation to the common law and should be strictly construed. Where exemptions appear in favor of the property owner, the exemptions should be construed in favor of the owner." Tou-

louse et al. v. Board of Zoning Adjust., City of Waterville, 147 Me. 387, 393, 87 A.2d 670, 673.

Applying such a construction, we conclude that the ordinance permits defendant to occupy the entire thirty feet of depth of the extension of the B-2 zone with his building so long as his lot contains sufficient area beyond this, as it does, to provide a twenty foot rear yard.

Although the provisions of the indentures creating the right of way are not before us, we are aware that these obligations—but not the zoning ordinance—will actually restrict defendant's location of his building to the first twenty feet of the thirty foot extension.

We know of only one jurisdiction which has considered the use of a more restricted area to supply the rear yard required for the less restricted zone. In Hutzler v. Mayor and City Council of City of Baltimore, 207 Md. 424, 114 A.2d 608 (1955) the Maryland Court was required to construe an ordinance which divided the city into both use areas and density of population areas with degrees of progressive restrictions. The issue there involved two density of population areas in the same use district and the Court found that the yard requirements of a building standing in the less restricted area could properly be satisfied out of that part of the lot which was located in the more restricted area. The Court found that the purposes of the yard requirements were to provide open spaces and light and air, and to regulate density of population and that these purposes had been fully met. Although the Court was concerned there with density areas and not use areas, we feel that the issues are somewhat analogous. Later, the same Court in Roland Park Civic League v. Lanco, Inc., 238 Md. 3, 207 A.2d 462 (1965) held that the parking space required for an apartment house in one density area might properly be located in another density area, in the absence of any express provisions in the ordinance forbidding it.

The second issue before us is whether that part of defendant's land which is subject to a private right of way by plaintiff in common with others can serve as the required rear yard.

The Maryland Court has considered a somewhat similar issue in Akers v. Mayor and City Council of Baltimore, 179 Md. 448, 20 A.2d 181 (1941), and we find that Court's reasoning helpful in the resolution of our own problem. There the Board of Zoning Appeals had in effect given approval to the use of an apartment house parking area to serve as the yard area which the ordinance demanded. The Baltimore ordinance did not specifically forbid this use and the court said:

"And whatever the objections in fact to the inclusion of the parking spaces in the open spaces or yards required, the ordinance itself does not prohibit it. 'Yard' is defined as 'the clear unoccupied space on the same lot with a building required by the provisions of this ordinance'. Par. 44(1). This cannot mean that nothing can be put on the space temporarily; there might be a variety of uses made other than by buildings which would leave the spaces still unoccupied, and yards, in the sense of this definition. It is with buildings that the ordinance is concerned in the definition, and so long as a space is occupied by none, there is, as the court sees it, no restriction against parking cars in the space required for yards. The protestants regard the restrictive designation of the use, for parking spaces, as a departure from the purpose of the ordinance in requiring yards, and perhaps there is ground for this conception of requirements for a suburban residential development, but it would require a more definite statement in the ordinance to enable a court to find in it a prohibition of the use."

 The ordinance of the City of Portland defines a "yard" as a space which is "maintained open, unoccupied and unob-structed". We find nothing in the Portland ordinance's definition of "yard" or in any of its other language which would prohibit an area burdened with a right of way of passage for persons and vehicles from serving as such a yard. We do not consider the passage or even the temporary stopping of vehicles to be inconsistent with the requirement of the ordinance that the space be open, unoccupied and unobstructed.

We recognize that the right of way is stated to be thirty feet wide and that only the most southwesterly ten feet of it is in the B-2 zone. Defendant's Exhibit 1, the defendant's development plan, portrays the expected use of considerably more than this ten foot strip as a delivery area in connection with defendant's building. Because of this, we point out that we do not intend here to suggest any opinion as to the propriety of such a use in a R-6 zone.

Appeal denied.

TAPLEY, J., not sitting.

DUFRESNE, J., sat at argument but did not participate in the decision.