## In re Appeal of WINDJAMMER HOSPITALITY

[772 A.2d 536]

### No. 00-446

April 11, 2001. Appellant Windjammer Hospitality Group (Windjammer) appeals from a decision of the environmental court which held that split lots must conform to the minimum lot frontage requirements required for each district in which they are located. On appeal, Windjammer contends that a split lot, one that lies in more than one zoning district, conforms to the applicable zoning bylaws as long as it maintains minimum lot frontage on one street. We affirm.

This case arises out of the City of South Burlington's denial of Windjammer's application to subdivide a 54-acre parcel which it currently leases, with a purchase option, from owner Evelyn Lamplough. Windjammer owns and operates Windjammer Best Western Inn and Conference Center, and Windjammer Restaurant, on the leased property. Approximately one acre of the leased property may be subject to a neighboring property owner's right of first refusal, which has prevented Windjammer from exercising its purchase option.

To address this concern, Windjammer and Ms. Lamplough submitted an application to the South Burlington Planning Commission seeking to subdivide the leased property. Proposed lot 1, consisting of a 1.47 acre lot, includes that portion of the leased property which is subject to the right of first refusal. Proposed lot 2, a 52.876 acre lot, encompasses all of the buildings and improvements associated with Windjammer's business, as well as vacant land. As proposed, the subdivision would enable Windjammer to purchase all of proposed lot 2 without triggering the right of first refusal. Windjammer would continue to lease lot 1.

The leased property is located in two zoning districts: the southern half of the parcel, including two segments with frontage on Williston Road and all of the land occupied by the motel, conference center and restaurant buildings, is located in the commercial zoning district (C-1); the northern, unimproved portion of the parcel, with frontage on Patchen Road, is located in the residential zoning district (R-4). Both Williston and Patchen Roads are classified as "arterial or collector" streets under the City's zoning regulations for the purpose of measuring minimum lot frontage. The minimum lot frontage on "arterial or collector" streets is 200 feet in the C-1 district, and 100 or 170 feet in the R-4 district, depending on use.

Under the proposed subdivision, lot 1 would fall entirely in the C-1 district, and would include a 234.57-foot segment of Williston Road frontage; lot 2 would fall in both districts, and include the entire 261.31-foot Patchen Road frontage, but only a 50-foot segment of Williston Road frontage. The minimum frontage required for lot 2 in the C-1 zoning district on Williston Road, however, is 200 feet. Additionally, "[h]otels, motels and restaurants are neither permitted nor conditional uses in the R-4 zoning district."

The City of South Burlington Planning Commission denied the subdivision application on the ground that proposed lot 2 did not have sufficient frontage on Williston Road. Windjammer appealed the decision to the environmental court, claiming that proposed lot 2 met the minimum frontage lot requirement because it had sufficient frontage on Patchen Road, and did not need to meet the minimum frontage requirements on Williston Road as well. The environmental court granted the City's motion for summary judgment.

In its decision, the environmental court first noted that, "if the proposed Lot 2

. . . were solely in the C-1 district, *or were split between districts allowing the use*, as long as the frontage on one street is adequate, the lack of sufficient frontage on the other street would be no bar to approval of the subdivision." (Emphasis added.) However, the court observed that as a "split lot," § 29.007 of the zoning bylaws was controlling. Section 29.007 states:

> Where a district boundary line divides a lot which was in a single ownership at the time of passage of these regulations, the Board of Adjustment may permit, as a conditional use, the extension of the regulations for either portion of the lot not to exceed fifty (50) feet beyond the district line into the remaining ` portion of the lot.

City of South Burlington, Vt. Zoning Regulations art. XXIX, § 29.007. The court held that "the necessary corollary of that provision is that, other than in such extension area, uses on a split lot must comply with the district requirements for the district they are in."

The environmental court also based its decision on § 25.115 of the bylaws, which requires that "[n]o lot shall be so reduced in size that the lot size, *frontage*, coverage, setbacks, or other requirements of these regulations shall be smaller than herein *prescribed for each district*." (Emphasis added.) The court found that the proposed subdivision would result in a violation of § 25.115 as "[i]t would reduce the lot size so that the frontage required for the commercial use in the C-1 district would be smaller than that prescribed for the C-1 district."

On appeal, Windjammer contends that the environmental court erred as a matter of law in requiring the proposed subdivision to fulfill minimum lot frontage requirements on both Williston and Patchen Roads. Specifically, Windjammer claims that the environmental court

"employed an overly narrow reading" of § 29.007, and asserts that but for the split-lot nature of proposed lot 2, it would satisfy the City's zoning bylaw frontage requirements.

We use "the same standard as the trial court," and will affirm a summary judgment "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Granger v. Town of Woodford*, 167 Vt. 610, 611, 708 A.2d 1345, 1346 (1998) (mem.); see also V.R.C.P. 56(c). We will defer to the environmental court's interpretation of a zoning ordinance unless the construction is clearly erroneous, arbitrary or capricious. *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998).

We agree with the trial court's interpretation of § 29.007. Appellant correctly notes that the environmental court construed § 29.007 to mean that *uses* on a split lot must comply with the zoning requirements for the district in which each portion of the split lot is located, but claims this is an "overly narrow reading" of the provision. In fact, the environmental court's interpretation is consistent with this Court's prior determination that split lot property which lies in two districts with differing use requirements must comply with the use provision in each. See *McLaughry v. Town of Norwich*, 140 Vt. 49, 54-55, 433 A.2d 319, 322 (1981). Thus, in *McLaughry*, where appellant's property was located in both a residential and a commercial zoning district, a denial of appellant's application to develop the property commercially was upheld where there was "no evidence to indicate that the property could not be used for two different purposes; that is, that part of it which lies within the business district could be used for business purposes, and that part of the property lying within the residential district could be used for residential purposes." *Id.*

Appellant draws our attention to decisions in other jurisdictions which have allowed property owners to aggregate

frontage from both zones in a split lot to meet the minimum frontage and lot size requirements for the zone in which improvements have been proposed. See, e.g., *Tofias v. Butler*, 523 N.E.2d 796, 799 (Mass. App. Ct. 1988) (landowner permitted to build structure on commercial portion of split lot using residential portion for purpose of calculating lot coverage requirements under zoning ordinance); *Moore v. Town of Swampscott*, 530 N.E.2d 808, 809 (Mass. App. Ct. 1988) (landowner permitted to use more restrictive zone of split lot to satisfy bylaw space and frontage requirements of less restrictive zone for purpose of building single family residence on combined parcel). In both of those cases, landowners were permitted to make a passive use of the more restricted zone to meet zoning requirements for active improvements planned for the less restricted portion of the lot. However, those cases are distinguishable from the instant case in that the landowners in both *Tofias* and *Moore* were attempting to aggregate parcels for a single, unified use of the land. See *Tobias*, 523 N.E.2d at 799 (noting underlying "desire to permit land owners to enjoy the use of their entire properties as single units"); *Moore*, 530 N.E.2d at 809 (permitting frontage in more restrictive district to meet bylaw requirements for a building in the less restricted district where neither lot alone is sufficient to meet zoning requirements in which they are located); see also *Forest City, Inc. v. Payson*, 239 A.2d 167, 169 (Me. 1968) (also noting desire to permit use of split lot properties as single units). In contrast, Windjammer seeks to subdivide a split lot, which is currently in compliance with the City's bylaws, rendering one of the resulting lots noncompliant.

Furthermore, a more recent decision by the Appeals Court of Massachusetts has held that "the use of land in another zoning district . . . solely to meet dimensional requirements is considered a permissible abstract or passive use where . . . *it appears both zoning districts permit the proposed active use.*" *Boulter Bros. Const. Co. v. Zoning Bd. of Appeals of Norfolk*, 697 N.E.2d 997, 999 (Mass. App. Ct. 1998) (emphasis added). Consistent with our holding in *McLaughry*, *Boulter* requires that the use within each zone remain in conformity with that district's use requirement.

In response to the environmental court's holding under § 25.115, appellant contends that that section constitutes a general provision of the zoning bylaws, and "does not impose any special requirement upon split lots." Appellant therefore claims that § 29.007, because it applies specifically to split lots, is controlling. See *City of Rutland v. Keiffer*, 124 Vt. 357, 362, 205 A.2d 400, 403 (1964) (special provisions control over general provisions in construing zoning ordinances). Appellant is correct in asserting that § 25.115 does not impose specific requirements on split lots; on the contrary, it applies to all lots. Section 25.115 prohibits the reduction of any lot area that would result in a reduction in the minimum dimensional requirements "prescribed for each district," and thus provides an additional basis supporting the denial of appellant's subdivision application.

*Affirmed.*