**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|   |   |   |
|---|---|---|
| In re Myers 2-Lot Subdivision Final Plat | } } } | Docket No. 121-6-09 Vtec |

## Decision on Motion for Summary Judgment

John "Jeff" Fothergill has appealed a decision of the Town of Calais Development Review Board ("DRB"), which granted John "J.C." Myers' ("Applicant") application for final plan approval in a two-lot subdivision of property located at 283 West County Road in Calais, Vermont. Mr. Fothergill is represented by John P. Riley, Esq.; Applicant appears pro se; the Town of Calais ("Town") is represented by its non-attorney Zoning Administrator, Dorothy O. Naylor.

Mr. Fothergill has filed a motion for summary judgment, requesting that Applicant's application be summarily denied because the proposed subdivision creates a lot that does not meet the minimum lot size requirements for the zoning district in which it lies. Applicant opposes the pending motion; it is now ripe for our consideration.

## Factual Background

For the sole purpose of putting the pending motion into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. Applicant owns a 3± acre lot located at 283 West County Road in Calais, Vermont, which he purchased in January 2002. Applicant's property, identified as Lot #3, is located near Curtis Pond in the Maple Corner section of Town; it is currently improved with a three-bedroom residence and a one-bedroom attached apartment.

2. Prior to 2003, Lot #3 was zoned within the Shoreland Zoning District. It was compliant with all of the applicable Town of Calais Land Use & Development Regulations ("Regulations"), including the three-acre minimum lot size requirement for properties within the Shoreland District. Regulations tbl. 2.4(E).

3. In 2003, the Town realigned the zoning districts, specifically relocating the boundary between the Curtis Pond Shoreland District and the Maple Corner Village District. As a result of this realignment, Applicant's property is no longer located exclusively within the Shoreland District; the district boundary now bisects Applicant's property. Lot #3 now consists of a 1.3±

1

acre portion in the Shoreland District and a 1.9± acre portion in the Village District. Despite this district boundary realignment, Lot #3 remains compliant with all applicable Regulations.

4.     On October 9, 2008, Applicant submitted to the DRB an application for preliminary plan approval to subdivide Lot #3 into two lots: Lots 3A and 3B.

5.     Proposed Lot 3B, which is currently unimproved, would consist of 0.83 acres and be located entirely within the Village District. There is no minimum lot size for lots within the Village District. Regulations tbl. 2.1(E). Applicant intends to retain ownership of Lot 3B, where Applicant hopes to construct a new three-bedroom residence.

6.     Proposed Lot 3A, where the existing residence and attached apartment are located, would consist of 2.17 acres and would be partially located within the Village District and partially within the Shoreland District. The minimum lot size requirement for lots within the Shoreland District is three acres. Regulations tbl. 2.4(E). Applicant ultimately intends to sell Lot 3A in its existing improved condition; no future development is planned or proposed on Lot 3A.

7.     The DRB granted Applicant preliminary plan approval on February 10, 2009.

8.     Applicant then applied for final plan approval on April 13, 2009. The DRB held a hearing on the application on April 28, 2009, and granted Applicant final plan approval in a written decision on June 2, 2009.

9.     Mr. Fothergill, who is an adjoining landowner residing at 139 Camp Road, was present at the hearing and granted interested person status. He appealed the DRB's June 2 Decision by filing with this Court a notice of appeal on July 8, 2009, contending that Applicant's proposed subdivision should be denied final plan approval.

10.     The sole issue raised by Mr. Fothergill's Statement of Questions is whether Applicant's subdivision application must be denied because it creates a nonconforming lot in the Shoreland District.

**Discussion**

Applicant proposes to subdivide his 3± acre lot into two separate lots, a subdivision that creates a 0.86-acre lot (Lot 3B) within the Village District and a 2.17-acre split lot (Lot 3A) partially located within both the Shoreland and Village Districts.[1] Mr. Fothergill opposes Applicant's two-lot subdivision and argues that proposed Lot 3A does not conform to the

---

[1] A lot that lies in more than one zoning district is sometimes referred to as a "split lot."

2

minimum lot size required for lots in the Shoreland District. Mr. Fothergill has moved for summary judgment on that issue.

As we have said before, summary judgment is only appropriate "when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Madkour v. Zoltak, 2007 VT 14, ¶ 12, 181 Vt. 347 (quoting Bacon v. Lascelles, 165 Vt. 214, 218 (1996); see also V.R.C.P. 56(c)(3). In applying this standard, we consider the facts presented in the light most favorable to the nonmoving party, giving them the benefit of all reasonable doubts and inferences. Id.; In re Miller Subdivision Final Plan, 2008 VT 74, ¶ 8, 184 Vt. 188 (citing Peerless Ins. Co. v. Frederick, 2004 VT 126, ¶ 10, 177 Vt. 441). With these standards in mind, we turn to the sole issue on appeal, guided by the Regulations relating to subdivision review.

Applicant's proposed two-lot subdivision is subject to review under Article 6 of the Regulations, which states that a subdivision must conform to the Town Plan and "all other municipal bylaws, ordinances, and regulations currently in effect." Regulations § 6.9(B). More specifically, "[l]ot sizes and densities set forth in Article 2 are a minimum standard" for subdivisions. Regulations § 6.9(D)(2). The minimum standard for lots within the Shoreland District is three acres. Regulations tbl. 2.4(E). In order to satisfy subdivision review, Applicant's proposal must therefore not create any lots within the Shoreland District that are smaller than three acres.[2] It matters not that Applicant's lot lies only partially within the Shoreland District; split lots must conform to the requirements for each district occupied. See e.g., In re Windjammer Hospitality, 172 Vt. 560, 561 (2001) (mem.).

In Windjammer, the applicant sought approval for a two-lot subdivision, which resulted in a split lot partially located within the residential district and partially within the commercial district. Id. The subdivision was ultimately denied because the proposed lot did not conform to the requirements for a lot within the commercial district; the lot did not have adequate road frontage on Williston Road. Id. at 562. In affirming the subdivision denial, the Court noted that

---

[2] The Regulations provide a means by which a zoning district boundary may be extended up to fifty feet into the adjoining district, where the district boundary line dissects a single lot. Regulations § 2.3(E). It would seem that this provision may afford relief for Applicant here, by extending the Village District and its standards fifty feet further into Applicant's lot, thereby allowing for the less onerous lot size requirements for a lot entirely in the Village District. However, the last sentence of § 2.3(E) provides that this fifty foot extension is not available to "the district boundary that separates the Curtis Pond shoreland and Maple Corner Village districts," at least where the boundary line extension would be moved closer to the shoreland. Thus, § 2.3(E) is not applicable and does not afford relief to Applicant and his subdivision proposal.

the applicant sought a subdivision that "render[ed] one of the resulting lots noncompliant" with the commercial zoning district requirements. Id. Accordingly, the Windjammer Court established that a subdivision must be denied if it creates a split lot that fails to comply with the dimensional requirements for either of the zoning districts in which it lies.

There is no dispute that Applicant proposes to create a lot that does not conform to the minimum lot size requirements. Proposed Lot 3A is a 2.17-acre lot that is partially located within the Shoreland District, where lots are required to contain at least three acres. To approve Applicant's subdivision, we are required to authorize the creation of an undersized lot. No provision in the Regulations authorizes us to do so.

Applicant attempts to distinguish Windjammer by contending that his two-lot subdivision does not create a nonconforming lot in the Shoreland District. He argues that the nonconformity preexists the subdivision proposal. According to Applicant, the nonconformity was created when the Town realigned the zoning districts in 2003 and relocated the Shoreland and Village District boundaries to bisect Lot #3, leaving a 1.3± acre portion of Applicant's property in the Shoreland District. Applicant argues that the resulting lot does not conform to the three-acre minimum size requirement.

Applicant misconstrues the import of a zoning district boundary. The 2003 district boundary realignment did not subdivide Applicant's property; the realignment did not divide Applicant's property into separate lots in separate zoning districts. Rather, Applicant's property remained as one lot, which now occupies area within two separate zoning districts. As currently configured, Applicant's lot continues to comply with all applicable Regulations: his property consists of a single three-acre lot, a portion of which is in the Shoreland District. Even though the lot spans two zoning districts, it meets the dimensional requirements for both districts.[3] See e.g., Tofias v. Butler, 523 N.E.2d 796, 799 (Mass. 1988) (allowing landowner of a split lot to aggregate property in both zoning districts to meet minimum lot size requirements), cited in Windjammer, 172 Vt. at 560. Lot #3 is therefore a conforming lot, not a preexisting nonconforming lot, as argued by Applicant.

We similarly reject any argument by Applicant that the subdivision should be approved because it does not involve any development within the Shoreland District. Even though Applicant proposes no development on Lot 3A, the act of subdividing constitutes development

---

[3] There is no minimum lot size for lots within the Village District. Regulations tbl. 2.1(E).

4

under the Regulations.[4]  Further, Applicant is required to satisfy the standards set forth in the subdivision review provisions of the Regulations, which provide in part that lots created by any proposed subdivision "shall . . . conform to lot and yard requirements" for the district in which it is located.  Regulations § 6.9(D)(2); see also Regulations § 3.6(C) ("No lot shall be so reduced in area that it cannot meet dimensional requirements for its district . . . .").  In sum, to approve Applicant's subdivision would require us to disregard multiple applicable provisions of the Regulations.

Finally, we find unpersuasive Applicant's argument that the proposed subdivision should be approved because the subdivision of Lot #3 furthers the Town's development goals.  Even though the Town encourages dense development within the Village District, there is no indication that the Town has authorized a disregard of the applicable requirements for development of land within the Shoreland District.  Were we to authorize Applicant's subdivision and creation of a separate Lot 3A, we would sanction the creation of an immediately non-complying lot within the Shoreland District.  The Regulations make clear that "[n]o lot shall be so reduced in area that it cannot meet dimensional requirements for its district."  Regulations § 3.6(C).  Subdivisions in the Shoreland District may not result in a lot less than three acres is size.  Regulations § 6.9(D)(2).  In light of the clear mandate that lots within the Shoreland District must contain at least three acres, we fail to see how Applicant's proposed subdivision can be granted.

Accordingly, we must **DENY** Applicant's application for final plan approval for the proposed two-lot subdivision of Lot #3.  The subdivision creates a nonconforming lot because it results in a 2.17-acre lot (Lot 3A) that is smaller than the three-acre minimum lot size for lots within the Shoreland District.  Mr. Fothergill's motion for summary judgment is therefore **GRANTED**.

## Conclusion

For all the reasons more fully discussed above, we **GRANT** Mr. Fothergill's motion for summary judgment and **DENY** Applicant's application for final plan approval for a two-lot subdivision of Lot #3, located at 283 West County Road in Calais, Vermont.  Proposed Lot 3A

---

[4]  The Regulations define a "subdivision" as a "type of development in which a parcel of land is divided into two or more parcels, for the purpose of immediate or future sale, transfer, lease or development."  Regulations § 9.2.

does not conform to the minimum size requirement for lots within the Shoreland District. Therefore, Applicant's proposed subdivision must be denied as a matter of law.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court concerning this appeal.

Done at Berlin, Vermont, this 28th day of April 2010.


_____

Thomas S. Durkin, Environmental Judge