STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-09-023
GAB - YOR 1/7/2011

SEAL HAROR, LLC,

Plaintiff

v.                                                    **ORDER**

INHABITANTS OF THE
TOWN OF OGUNQUIT,

Defendants

Seal Harbor, LLC, appeals from the Town of Ogunquit's Zoning Board of Appeals' decision to uphold the Code Enforcement Officer's denial of the appellant's October 23, 2008 Building Permit Application.

## BACKGROUND

Seal Harbor owns at 42,641 square foot lot located at 293 Main Street in Ogunquit, Maine. (R. at Tab 3, pp. 1–2.) The lot is split by the General Business District 1 (GBD1) zone and the Residential District (RD) zone. (R. at Tab 3, p. 2.) The GBD1 portion of the lot occupies 24,723 square feet, while the RD portion occupies 17,918 square feet. (R. at Tab 3, p. 2.) There is no relevant distinction between the zones for the purposes of this case.

Prior to the adoption of the Ogunquit zoning code and the subdivision ordinance, a building containing three dwelling units was constructed on what is now the GBD1 portion of the lot. (R. at Tab 3, p. 2.) In the 2003 version of the Zoning Ordinance, the maximum residential density in both the RD and the GBD1 zones was 10,000 square feet per residential unit. (R. at Tab 3, p. 2.) Under this version the

ordinance, Seal Harbor sought and received approval to relocate two of the three existing residential units into a new building to be constructed on the GBD1 portion of the lot, and to convert the existing building into a single residential unit. (R. at Tab 3, p. 2.) The density requirements in effect at that time would have allowed Seal Harbor to construct a fourth residential unit on the lot, but the appellant chose to wait five years before doing so in order to avoid triggering the need for subdivision review. (R. at Tab 3, p. 2.)

Effective April 5, 2008, the Zoning Ordinance was amended to increase the maximum residential density in the RD and GBD1 zones to 12,500 square feet per residential unit. (R. at Tab 3, p. 2.) Seal Harbor subsequently applied for a building permit to construct a fourth dwelling unit on the lot, to be located entirely on the portion zoned RD. (R. at Tab 3, p. 3.) On November 3, 2008, the Code Enforcement Officer (CEO) denied the application. In a letter to Seal Harbor, the CEO explained:

> The gross lot area is 42,641 sq. ft. and the (3) three single-family dwellings on same require 37,500 sq. ft., or 12,500 sq. ft of area per unit. Your request for a 4th dwelling unit would require a total gross lot area of 50,000 sq. ft or 12,500 sq. ft. per unit. Your land area would be approximately 7,400 sq. ft. short for 4 dwellings on this basis alone.

(R. Tab 6, p. 1.) The letter gave two other reasons that are not relevant to this appeal. (R. Tab 3, p. 1.)

Seal Harbor appealed to the Zoning Board of Appeals (ZBA), arguing that the CEO erred when he found that the total gross lot area was insufficient to support four dwellings. (R. Tab 3, p. 3.) While the total lot area is 42,641 square feet, Seal Harbor noted that the portion in the RD zone contains 17,918 square feet. (R. Tab 3, p. 4.) This exceeds the minimum 12,500 square feet required for a residential dwelling. Seal Harbor argued that under the ordinance, the CEO should have treated the GBD1

2

portion of the lot and its three residential units as a separate parcel and excluded them from consideration. (R. Tab 3, p. 4.)

Following a hearing, the ZBA determined that the appellant's interpretation of the ordinance would create a nonconformity with regard to the existing three residential dwelling units located in the GBD1 portion of the lot. (R. Tab 1, p. 2.) In 2003 the ordinance required a minimum of 30,000 square feet to accommodate three residential dwellings, but the GBD1 portion of the lot only contains 24,723 square feet. The ZBD voted to deny Seal Harbor's appeal, implicitly treating the split lot as a unitary whole for the purpose of calculating density under the ordinance. (R. Tab 1, p. 2.) Seal Harbor now appeals to this court, arguing that the ZBA erroneously treated the lot as a unified whole, and erroneously determined that finding for the plaintiff would create the already-existing nonconformity.

## DISCUSSION

At issue is the proper interpretation of the Town of Ogunquit's Zoning Ordinance. "The interpretation of a zoning ordinance" is a question of law that the court reviews de novo. *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 7, 946 A.2d 408, 410. The court first looks "at the plain meaning of the language to give effect to legislative intent." *Id.* ¶ 9, 946 A.2d at 411 (quoting *Clarke v. Olsten Certified Healthcare Corp.*, 1998 ME 180, ¶ 6, 714 A.2d 823, 824) (quotations omitted). "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Id.* (quoting *Gerald v. York*, 589 A.2d 1272, 1274 (Me. 1991)) (quotations omitted).

The Zoning Ordinance addresses the problem of "split-lots" as follows:

> Where a zoning district boundary line divides a lot or parcel of land in the same ownership of record at the time such line is established by adoption or amendment of this Ordinance, the use regulations

3

> applicable to the less restricted potion of such lot may extend not more
> than 50 feet into the more restricted portion. . . . The space and bulk
> regulations of the district shall apply to the land within those districts
> and are not subject to the 50-foot provision.

Town of Ogunquit, Me., Zoning Ordinance § 1.4(D) (Apr. 5, 2008); (R. Tab 10, p. 1). The Law Court has interpreted almost identical language in another zoning ordinance as representing "a compromise between the ordinance's apparent recognition of the value of regular zone boundaries and a desire to permit land owners to enjoy the use of their entire properties as single units." *Forest City, Inc. v. Payson*, 239 A.2d 167, 169 (Me. 1968).

In *Forest City, Inc. v. Payson*, the ordinance addressed split-lots by stating: "[T]he provisions of this Ordinance for the less restricted portion of such lot shall extend not more than thirty feet into the more restricted portion . . . ." *Id.* at 168. The ordinance also imposed additional street-frontage requirements and limitations. *Id.* The appellant owned a lot split between a business and residential zone, and wished to construct a commercial building that would extend over the line. *Id.* at 167–68. A minimum rear yard of twenty feet was required, and the question was whether that requirement had to be satisfied out of the portion of the lot in the business zone, or whether the rear yard could lie in the residential zone. *Id.* at 168.

The Court determined that the ordinance treated split-lots as "single units," and noted that other applicable provisions were "significant for the absence of any attempt to limit a lot by zone lines." *Id.* at 169. Applying the ordinance, the Court concluded that the appellant could "occupy the entire thirty feet of depth of the extension of the [business] zone with his building so long as his lot contain[ed] sufficient area" in the residential zone for the twenty-foot rear yard. *Id.*; *see Tofias v. Butler*, 523 N.E.2d 796 (Mass. 1988) (citing *Forest City, Inc.* with approval and calculating the coverage of a split-lot by reference to the lot lines rather than the zoning boundaries).

4

Ogunquit's zoning ordinance sets forth its space and bulk provisions in Table 703.1, titled "Dimensional Requirements of Each Zoning District." (R. Tab 9, p. 1.) The "Minimum Net Residential Area Per Dwelling Unit" is 12,500 square feet for both the RD and GBD1 zones. (R. Tab. 9, p. 1.) Because the appellant's lot is not contained within and does not constitute a subdivision, its "net residential area" equals "the *lot area for lots not created by a subdivision*, as defined by [the] ordinance." Town of Ogunquit, Me., Zoning Ordinance Article II at 15 (Apr. 5, 2008); (R. Tab 12, p. 15). The ordinance defines the *"lot area for lots not created by a subdivision"* as "[t]he area of land enclosed within the boundary lines of a lot . . . ." Town of Ogunquit, Me., Zoning Ordinance Article II at 13 (Apr. 5, 2008); (R. Tab 12, p. 13). A "lot" is defined as "[a] parcel of land for which a description has been recorded at the York County Registry of Deeds . . . ."[1] Town of Ogunquit, Me., Zoning Ordinance Article II at 13 (Apr. 5, 2008); (R. Tab 12, p. 13).

Like the ordinance in *Forest City, Inc.*, Ogunquit's ordinance makes no attempt to limit lots or lot sizes by zone boundaries. Instead, the ordinance exclusively refers to a lot as a unified parcel, the size of which is determined solely by reference to its legal property boundary. If Seal Harbor's lot were not split by the zone boundary, there would be no question that its lot area is insufficient to support four dwelling units under the ordinance. However, the appellant argues that because the property is divided by a zone boundary, the net residential area for each portion should be calculated and applied separately. It cites section 1.4(D) of the ordinance, which reads: "The space and bulk regulations of the district shall apply to the land within those districts and are not subject to the 50-foot provision." Town of Ogunquit, Me., Zoning Ordinance § 1.4(D) (Apr. 5, 2008); (R. Tab 10, p. 1).

---

[1] There is no dispute that Seal Harbor's property is a single lot under the ordinance.

Under the appellant's argument, section 1.4(D) effects a de facto subdivision of the lot into two separate parcels for the purpose of calculating bulk and density. The appellant emphasizes that the space and bulk regulations apply *"to the land"* within each district. However, a fair reading of Ogunquit's Zoning Ordinance refutes the appellant's position.

The first line of section 1.4(D) allows "the use regulations applicable to the less restricted portion of such lot" to extend up to fifty feet into the more restricted portion. As in *Forest City, Inc.*, this evinces an intent to treat the lot as a single unit while retaining the protections traditionally sought by zoning. *Forest City, Inc.*, 239 A.2d at 169. Section 1.4(D) goes on to address how the space and bulk regulations associated with allowable uses are to be applied. While the uses allowed in the less-restricted portion of the lot may extend across the zone boundary, structures associated with those uses must meet the space and bulk requirements[2] of the more-restricted portion. Nothing in section 1.4(D) purports to alter the definitions of "lot," "lot area," or "net residential area."

Applying this construction of the ordinance, section 1.4(D) has little or no relevance to this case because the space and bulk requirements for residential uses in the RD and GBD1 zones are identical. The ZBA correctly denied Seal Harbor's application for a building permit for a fourth residential unit because a minimum of 50,000 square feet are required to support four dwelling units on a single lot, and the appellant has only 42,641 square feet. Approving the application would have "created a nonconformity with regard to the existing three dwelling unit[s]" because they

---

[2] Space and bulk requirements include minimum areas for dwelling units, minimum lot areas, minimum street frontages, setbacks, maximum building coverage, and maximum building height. Town of Ogunquit, Me., Zoning Ordinance Table 703.1 (Apr. 5, 2008); (R. Tab 9, pp. 1–2).

currently comply with the ordinance's minimum density requirements, as they have since 2003.

When Seal Harbor altered the three existing dwelling units in 2003, the minimum density requirements called for 30,000 square feet at 10,000 square feet per unit. While this exceeded the 24,723 square feet in the GBD1 portion of the property, the net residential area of the lot as a single unit could accommodate the development. Indeed, the lot could have accommodated the fourth dwelling unit under the then-applicable density requirements. However, building the fourth residential unit at that time would have necessitated subdivision review. When the appellant chose to wait for the five-year look-back period to run before pursuing further development, that decision carried with it an element of regulatory risk. This risk materialized in the 2008 amendment which increased minimum density requirements, thus frustrating its development plans.

## CONCLUSION

Following hearing, Seal Harbor, Inc.'s Rule 80B appeal is denied and the Zoning Board of Appeals' decision is affirmed.

The clerk may incorporate this order in the docket by reference.

Dated:      January 7 , 2011

G. Arthur Brennan
Justice, Superior Court

Plaintiff's Attorney:               Defendant's Attorney:
Steven E. Cope, Esq.                Gordon C. Ayer, Esq.
Cope Law Firm                       Watermark Law, LLC
P.O. Box 1398                       P.O. Box 367
Portland, ME 04104                  Kennebunk, ME 04043

7