EDWARD T. MOORE & another,[1] trustees *vs.* TOWN OF SWAMPSCOTT & another.[2] No. 87-1437. November 29, 1988. *Zoning,* Lot size, Split lots, Zoning district.

This case, brought in the Land Court under G. L. c. 240, § 14A, deals with a parcel of land in Swampscott (the locus) which the owners had formed in a manner placing a part of the locus (referred to on a plan in the· record as Lot 2) in a more highly restricted A-1 zoning district than the balance of the locus (referred to on the same plan as Lots 3A and 3B) which lie southwest and adjacent to Lot 2 in a less restricted A-3 district. Lot 3A is not involved in this case at all.

The situation was described in the order of the Land Court judge as follows: "In a Residence A-1 District the Swampscott zoning by-law permits single-family residences as of right on lots having a minimum area of 30,000 square feet and 125 feet of frontage, and in an A-3 District the zoning by-law authorizes two-family residences as of right on lots with a minimum

---

[1] J. Alan Chew, who, together with Moore, are trustees of Gregory Street Realty Trust.

[2] The inspector of buildings of Swampscott.

area of 10,000 square feet and 80 feet of frontage. The by-law also permits within an A-3 District a single-family [house], with the same minimum provisions as to lot size and frontage." Lot 3B, the northern boundary of which is Lot 2, "lies entirely within the A-3 District, has an area of approximately 11,500 square feet and [eight] feet of frontage on Atlantic Avenue" (a public highway). Lot 2 "lies entirely within the A-1 District, has an area of 8,730 square feet and 117 feet of frontage on Atlantic Avenue."

"Neither Lot 2 nor Lot 3B is separately sufficient to meet the requirements of the respective zoning districts within which they are each located. However, when [Lots 3B and 2 are] combined to form [a] single hybrid lot . . . , there is sufficient frontage to meet the minimum [frontage] requirements in either district, and sufficient lot size to comply with the minimum lot size requirements of the A-3 District."

On this basis of fact, the Land Court judge ruled on November 2, 1987, essentially that the frontage in the more restricted A-1 district could be used to meet the by-law requirements for a building in the less restricted A-3 district, but only for a single family residence, a permitted use in both the A-1 and A-3 districts. This ruling was made despite the circumstance that a two-family residence was a permitted use in an A-3 district.

The Land Court judge's decision must be modified in one respect because on June 3, 1988, this court decided *Tofias* v. *Butler*, *ante* 89, 94-97 (1988). That case held that, for a use permitted in a less restricted zoning district, land in a more restricted zone could "supply space for a yard or the like, . . . a use not inconsistent with the requirements of such a [more restrictive] district." It was pointed out (at 95-97), however, that the use of the land in the more restricted district must be merely "abstract," i.e., to satisfy the by-law, rather than "an active, prohibited use of" the land in the more restricted district.

Under the authority of the *Tofias* case, the owners of this locus could use the land in the more restricted A-1 part of the combined area for an "abstract" or passive use to satisfy the by-law space and frontage requirement for a two-family residence the owners proposed to erect in the less restricted A-3 part of the locus. The *Tofias* case thus established that structures in an A-3 district were not confined only to those types allowed in the more restricted A-1 district.

The judgment is to be modified to permit the construction of either a one-family or a two-family residence entirely within Lot 3B, when Lot 3B is combined with the passive or abstract use of Lot 2. The case is remanded to the Land Court for further proceedings consistent with this opinion.

*So ordered.*

*Arthur J. Palleschi*, Town Counsel, for the defendants.
*Paul L. Feldman* (*Julian J. D'Agostine* with him) for the plaintiffs.