NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-332

CASEY FLEMING & others[1]

vs.

ZONING BOARD OF APPEALS OF OXFORD & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Casey Fleming, the plaintiff, appeals from a Land Court judgment affirming on summary judgment the decision of the Oxford zoning board of appeals (board) upholding a cease-and-desist order from the town's zoning enforcement officer. The order prohibits the plaintiff from maintaining a significant breeding and sale operation involving bearded dragons and a breeding operation involving turtles on his residentially zoned property. The plaintiff claims that the breeding and sale of

---

[1] Kevin F. Carbonneau and Robert J. King. Fleming represents himself pro se on appeal. While he purports to appeal on behalf of all three owners, Fleming cannot represent others in court because he is not an attorney. See Wilbur v. Tunnell, 98 Mass. App. Ct. 19, 23 (2020). Because Carbonneau and King did not appeal the Land Court's order as to them, it is not affected by this appeal.

[2] Peter LaFlash, David Silverman, Stephen Balcunas, Alfred St. Germain, and Thomas Purcell in their official capacity, as they are members of the Oxford zoning board of appeals.

the bearded dragons and the breeding of turtles are (1) "agriculture," an as-of-right use; (2) a permitted home occupation; and (3) exempt from the section of the town's zoning bylaw limiting the quantity of animals allowed without a special permit, because the bearded dragons and turtles are "customary household pets."  We affirm.

Background.  "We summarize the findings set forth in the order on the parties' cross motions for summary judgment, supplemented by other uncontroverted facts in the summary judgment record, . . . and viewing the evidence in the light most favorable to the party against whom summary judgment was entered," here, the plaintiff (quotation and citation omitted).  Williams v. Board of Appeals of Norwell, 490 Mass. 684, 685 (2022).  The plaintiff, along with his two co-plaintiffs, jointly owned a property in Oxford.  They lived at the property, which was in a residential district zoned R-3 pursuant to Oxford's zoning bylaw.  The plaintiff operated a business breeding and selling bearded dragons[3] on his property, and also kept a large number of breeding turtles as pets, with no specific plans to sell the turtles.  The plaintiff estimated that he had approximately 400 bearded dragons and sixty turtles

---

[3] Bearded dragons are medium-sized lizards that are native to Australia and a popular pet among reptile enthusiasts.  Rich, Hess & Axelson, Bearded Dragons -- Owning, VCA Animal Hospitals, https://vcahospitals.com/know-your-pet/bearded-dragons-owning.

at the property.  Except for when the weather was warm enough for the bearded dragons and turtles to be outside, the plaintiff kept the bearded dragons in the garage of the property and the turtles in the basement.  The plaintiff also bred some insects on-site to feed to the bearded dragons; a plastic drape separated the areas where the insects and the bearded dragons were kept.

1.  <u>The underlying order and board appeal</u>.  The town's zoning enforcement officer issued a cease-and-desist order to the plaintiff in April 2021, citing violations of chapter III, sections 2.1.3, 2.1.6,[4] and 3.8[5] of the zoning bylaw (provisions

_____

[4] Section 2.0, Home Occupations, reads in pertinent part as follows:
"Home occupations are permitted in all districts . . . if they comply with the conditions set forth below:

"2.1 Performance Standards

"No home occupation shall be permitted that:

" . . .

"2.1.3 May create a hazard to person or property, results in electrical interference, or becomes a nuisance;

" . . .

"2.1.6 Uses more than twenty-five (25) percent of the net floor area of the dwelling."

[5] Section 3.0, Accessory Uses, reads in pertinent part as follows:
"Accessory uses and structures may include, but are not limited to, the following:

about home occupations, allowed animals, and accessory uses, respectively).  Oxford, Mass., Zoning Bylaw c. III, §§ 2.1.3, 2.1.6, 3.8.  The plaintiff appealed the order to the board that same month, claiming that (1) breeding and raising bearded dragons and turtles was "agriculture," an as-of-right use; (2) section 3.8 applied only to chickens and ducks; and (3) the building commissioner's estimate of the floor area used by the business was unsubstantiated, rendering the citation under section 2.1.6 improper.  The plaintiff did not appeal the citation under section 2.1.3 (prohibiting home occupations that may create a hazard, electrical interference, or a nuisance).

In July 2021, the board upheld all cited violations from the cease-and-desist order.  The board found that the plaintiff was running a commercial breeding operation that may cause a hazard, electrical interference, or a nuisance; the plaintiff was using more than twenty-five percent of the residential floor area of the property for the commercial operation; the turtles and bearded dragons were not pets; and breeding was not the

---

" . . .

"3.8 Egg-laying chickens and ducks six or under total chickens and ducks combined, are excluded from all districts except upon grant of a license by the Board of Selectmen.  All other animals or birds, including egg-laying chickens and ducks, in quantities of seven or over, other than customary household pets, are excluded from all districts except upon grant of a special permit by the Board of Selectmen."

primary use of the property and thus was not "agriculture" under the zoning bylaw or G. L. c. 40A, § 3.

2. Land Court appeal and summary judgment order. At the end of July 2021, the plaintiff filed a complaint in the Land Court appealing the board's order. The Land Court judge determined, on cross motions for summary judgment, that (1) the keeping, breeding, and sale of bearded dragons did not constitute "agriculture;" (2) the plaintiff had not appealed the cease-and-desist order's citation under section 2.1.3 and therefore could not maintain his business as a home occupation under the zoning bylaw; and (3) bearded dragons were not customary household pets, and, whether or not turtles were customary household pets, "there is nothing customary about owning 60 of them at a time and keeping them in a basement." The judge concluded that "the [board]'s Decision is based on a reasonable interpretation of the [zoning bylaw] and is entitled to deference," and dismissed the plaintiff's complaint.

Discussion. 1. Standard of review. "The allowance of a motion for summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law" (quotation and citation omitted). Williams, 490 Mass. at 689. "[B]ecause the Land Court judge decided the case on cross motions for summary judgment, we give no deference to [her] decision. Instead, from

5

the same record as the motion judge, the reviewing court examines the allowance of summary judgment de novo" (quotation and citation omitted). Pinecroft Dev., Inc. v. Zoning Bd. of Appeals of West Boylston, 101 Mass. App. Ct. 122, 128 (2022). This is because the judge, on cross motions for summary judgment, "does not engage in fact finding." 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 699 (2012). Rather, "[w]here both parties have moved for summary judgment, the evidence is viewed in the light most favorable to the party against whom judgment [entered]," here the plaintiff (citation omitted). Id.

"Review of a board's decision . . . pursuant to G. L. c. 40A, § 17, involves a 'peculiar' combination of de novo and deferential analyses . . . . Although fact finding . . . is de novo, a judge must review with deference legal conclusions within the authority of the board" (footnotes omitted). Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 381 (2009). "If the board's decision is supported by the facts found by the judge, it 'may be disturbed only if it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.'" Fish v. Accidental Auto Body, Inc., 95 Mass. App. Ct. 355, 362 (2019), quoting Bateman v. Board of Appeals of Georgetown, 56 Mass. App. Ct. 236, 242 (2002). "Deference is . . . owed to a local zoning

6

board because of its special knowledge of the history and purpose of its town's zoning by-law" (quotation and citation omitted). Wendy's, supra. "Accordingly, a judge must give substantial deference to a board's interpretation of its zoning bylaws and ordinances" (quotation and citation omitted). Id. Because the board's interpretation and application of the zoning bylaw was reasonable, and we see no dispute of fact that would render the board's decision unreasonable when viewed in the light most favorable to the plaintiff, we affirm.

2. As-of-right agricultural use. The board found that "the breeding of reptiles is not the primary use of the Property and such activity does not constitute 'agriculture' in the Town of Oxford nor pursuant to G. L. c. 40A, § 3."[6] The plaintiff maintains on appeal that "the breeding and raising of animals is agricultural, which Chapter 4, Section 2.4, Table 1 of the Zoning Bylaws permits as of right in R-3 Residential areas."

"[W]here [a bylaw's] language is plain and unambiguous, we enforce the bylaw according to its plain wording," but where "terms are undefined or otherwise ambiguous, we will defer to

---

[6] The plaintiff maintained both before the board and the Land Court that the business was protected as "agriculture" pursuant to G. L. c. 40A, § 3, which prohibits restrictions on using certain land for agricultural purposes. The plaintiff does not endeavor to prove here that the property meets the requirements for protection under that statute, and his argument no longer relies on G. L. c. 40A, § 3.

7

the local zoning board's reasonable interpretation" (quotation and citation omitted). Pinecroft, 101 Mass. App. Ct. at 128. Interpreting a bylaw follows ordinary rules of statutory construction, including giving words their usual and accepted meanings and considering the law's purpose. See Williams, 490 Mass. at 693-694. "An interpretation of a bylaw provision is unreasonable if it is inconsistent with that provision's purpose or the bylaw as a whole." Pinecroft, supra.

"Agriculture" is not defined by the zoning bylaw, nor by another controlling statute. Therefore, we defer to the board's interpretation unless it is unreasonable and inconsistent with the purpose of the zoning bylaw because the board, with its specialized knowledge about the bylaw's history and purpose, was in the best position to interpret it. See Wendy's, 454 Mass. at 381; Pinecroft, 101 Mass. App. Ct. at 128. We cannot say that the board's interpretation -- that the activities involved in this case did not fall under "agriculture" -- and the conclusion that the plaintiff's use was not protected as of right by the zoning bylaw were unreasonable. See Pinecroft, supra.

The plaintiff cites several cases interpreting the meanings of "livestock" and "agriculture" dating from both before and after a definition of "agriculture" was incorporated into G. L.

8

c. 40A, § 3.[7]  None of these cases required the board to conclude that the bearded dragons and turtles involved in this case are "livestock" and therefore "agriculture."  Much of the case law that has contemplated the definition of "livestock" as it pertains to zoning laws has involved properties primarily used for "agricultural" pursuits, while the plaintiff's property is primarily a residence.  See Town of Sturbridge v. McDowell, 35 Mass. App. Ct. 924, 925 (1993).  Further, bearded dragons and turtles are a far cry from the animals traditionally found on working farms -- such as horses, dogs, cattle, pigs, and goats -- and contemplated by Massachusetts law.

3.  Home occupation limitations.  The board ordered the plaintiff to cease and desist "all commercial activities, including . . . raising, or breeding reptiles," and cited the plaintiff under both sections 2.1.3 and 2.1.6 of chapter III of the zoning bylaw.  Section 2.1.3 prohibits home occupations that may create a hazard or become a nuisance (hazard or nuisance provision), and the zoning enforcement officer stated that he

---

[7] The definition is found in G. L. c. 128, § 1A:

> "'Farming' or 'agriculture' shall include farming in all of its branches and . . . the raising of livestock including horses, the keeping of horses as a commercial enterprise, the keeping and raising of poultry, swine, cattle and other domesticated animals used for food purposes, bees, fur-bearing animals, . . . performed by a farmer, who is hereby defined as one engaged in agriculture or farming as herein defined, or on a farm."

9

"observed nuisance odors and dangerous electrical cords being used, as well as hazardous heat lamps in containers full of leaves and other flammable materials." Section 2.1.6 prohibits home occupations which use more than twenty-five percent of the net floor area of the dwelling (floor area provision), and the zoning enforcement officer estimated that the business used approximately fifty-six percent of the total floor area of the property.

While the plaintiff appealed the citation under the floor area provision, section 2.1.6,[8] he did not appeal the citation under section 2.1.3, instead stating that he was "working with Town officials to correct the code violations cited at the subject premises." Nothing in the record indicates that the town ever withdrew the citation for hazard or nuisance violations under section 2.1.3; indeed, the board upheld the cease-and-desist order with respect to section 2.1.3. Thus, the board's decision under section 2.1.3 stands unchallenged. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006). The plaintiff's failure to appeal the citation under 2.1.3 disposes of his "home occupation" argument altogether, because a violation of either section 2.1.3 or section 2.1.6 prevents the

_____

[8] In his appeal to the board, the plaintiff contested the citation under section 2.1.6, claiming that the business used less than twenty-five percent of the floor area of the home.

10

plaintiff from maintaining his business as a home occupation under the zoning bylaw.

4. "Customary household pets." The board found that (1) "bearded dragons are not customary pets in the Town of Oxford," (2) bearded dragons were not kept as pets at the property but rather for commercial breeding purposes, and (3) "the turtles and bearded dragons clearly are not pets due to the large number of them."[9] The plaintiff claims that the board erred in finding a violation of the household pet provision of the bylaw, reasoning that turtles and bearded dragons are sold in pet stores and thus are customary household pets within the plain meaning of the term. Assuming without deciding that turtles and bearded dragons are customary household pets, the animating goal of section 3.8 as it pertains to household pets appears to have been permitting the animals to be kept in the quantities in which people tend to keep household pets, and the board had specialized knowledge of that goal. See Wendy's, 454 Mass. at 381. Although one might debate whether having ten or eleven nonbreeding dogs would violate the household pet provision, it was reasonable for the board to decide that keeping breeding turtles by the dozens and breeding bearded dragons by the

_____

[9] Chapter III, section 3.8 of the zoning bylaw requires a special permit for residents to keep more than seven animals "other than customary household pets" (household pet provision).

11

hundreds was not keeping the animals as customary household pets.  See Pinecroft, 101 Mass. App. Ct. at 128.

Conclusion.  The plaintiff has not shown the board's conclusion to be legally untenable, unreasonable, whimsical, arbitrary, or capricious.  See Fish, 95 Mass. App. Ct. at 362. We discern no error in the decision granting summary judgment to the defendants.

Judgment affirmed.

By the Court (Hand, Hershfang & Brennan, JJ.[10]),

Assistant Clerk

Entered:  March 21, 2024.

---

[10] The panelists are listed in order of seniority.