NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1116

KEVIN M. SEXTON, trustee,[1]

vs.

ZONING BOARD OF APPEALS OF WELLFLEET.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal arises from the plaintiff's efforts to create additional parking and construct a new driveway for rental cottages he owns on property in the town of Wellfleet.  The town's building commissioner ordered that the plaintiff cease and desist from cutting "timber" (first order) and from expanding the parking lot without the required permit (second order), informing him that those actions violated certain sections of Wellfleet's zoning bylaws (bylaws).  After the town's zoning board of appeals (board) affirmed the cease and desist orders, the plaintiff appealed the board's decisions to the Land Court under G. L. c. 40A, § 17.  The plaintiff then

_____

[1] Of the Cook Family Trust II.

moved for summary judgment, claiming that the board's decisions were "legally untenable, improper, arbitrary, capricious, unreasonable, and exceeded the Board's authority." We affirm the Land Court judge's order (1) entering summary judgment for the board and against the plaintiff with respect to the first order; (2) entering summary judgment for the board and against the plaintiff with respect to the second order, to the extent it required the plaintiff to apply for a permit before cutting any further trees to create additional parking on his property; and (3) remanding the matters to the board to determine whether clearing some amount of the property would be permitted as "reasonable control of brush and trees" under bylaw section 6.9 (section 6.9) and to allow the plaintiff to apply for the appropriate permit to expand parking and create a new driveway.

Background. The summary judgment record establishes the following facts, which are not in dispute. The plaintiff owned land in the town of Wellfleet (property), within the National Seashore Park District (NSP), which covers the portion of Wellfleet located within the Cape Cod National Seashore National Park (CCNS). The plaintiff operated a cottage colony on the property, consisting of sixteen rental cottages, one single-family residence, and parking. Bylaw section 5.3.2 prohibited cottage colonies in the NSP; however, the plaintiff's cottage

2

colony was allowed as a preexisting nonconforming use under bylaw section 6.1.

On June 14, 2021, the plaintiff's brother informed the Wellfleet building commissioner that trees would be cut down on the property in connection with the construction of a private parking lot and dirt driveway.  Tree cutting commenced that day. All trees cut were "scrub pine trees."  On June 15, 2021, the building commissioner issued the first order, asserting that the plaintiff's tree cutting violated section 6.9 governing the cutting of "timber" in the NSP.  The plaintiff stopped cutting trees after receiving the order.  On June 25, 2021, the building commissioner issued the second order, asserting that the plaintiff's tree cutting violated bylaw section 8.2, which required a permit for the alteration of use of land in the NSP, and section 5.3.2, which required a permit for extension of a nonconforming use.  The order informed the plaintiff he could submit a permit application to seek zoning approval.

Discussion.  1.  Standard of review.  "The allowance of a motion for summary judgment 'is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law'" (citation omitted). Williams v. Board of Appeals of Norwell, 490 Mass. 684, 689 (2022).  Our review is de novo.  See Tracer Lane II Realty, LLC

3

v. Waltham, 489 Mass. 775, 778 (2022). "We will uphold a zoning board's decision and that of the reviewing [Land] Court if a rational basis for the [decision] exists which is supported by the record" (quotation and citation omitted). Eastern Point, LLC v. Zoning Bd. of Appeals of Gloucester, 74 Mass. App. Ct. 481, 486 (2009).

2. Cutting of "timber". In relevant part, section 6.9, "Cutting of Timber," provides as follows: "Within the National Seashore Park District there shall be no cutting of timber except for the following reasons: (a) By an owner for the purpose of reasonably controlling brush or trees . . . ." The board found that the plaintiff cut trees "to build a parking area and driveway for the residents of the cottage colony . . . ." It determined that the word "timber," as used in section 6.9, "includes 'scrub pine' trees, the type of trees removed during the course of the [plaintiff's] tree removal project." The plaintiff argues that the word "timber" refers to trees that are used to produce building materials. He asserts that scrub pines are "unsuitable for lumber," and therefore the board's interpretation of section 6.9 was error. We disagree.

"[W]here [a bylaw's] language is plain and unambiguous, we enforce the bylaw according to its plain wording," but where "terms are undefined or otherwise ambiguous, we will defer to a

4

local zoning board's reasonable interpretation" (citation omitted). Pinecroft v. Zoning Bd. of Appeals of West Boylston, 101 Mass. App. Ct. 122, 128 (2022). Interpreting a bylaw follows ordinary rules of statutory construction, including giving words their usual and accepted meanings and considering the law's purpose. See Williams, 490 Mass. at 693-694. "An interpretation of a bylaw provision is unreasonable if it is inconsistent with that provision's purpose or the bylaw as a whole." Pinecroft, supra at 128. If the board's interpretation of its bylaw is reasonable, the court may not substitute its judgment. Tanner v. Board of Appeals of Boxford, 61 Mass. App. Ct. 647, 649 (2004).

Although the bylaw does not define "timber," the prohibition against the cutting of "timber" in section 6.9 is limited to land located in the NSP. The board based its interpretation of "timber" as including scrub pines on several factors. First, the board found that, dating back to the adoption of section 6.9, most trees in the NSP were scrub pine trees and few, if any, were "trees suitable for use in the erection of buildings." The board also looked to the stated objective of zoning bylaws for the NSP, all of which is located within the CCNS, to protect "the scenic, scientific[,] and cultural values of the area," to preserve undeveloped areas in

5

their natural condition, and to allow for uses that do not conflict with the regulations governing activities in the CCNS. 36 C.F.R. § 27.3(a)-(b). The board further considered the broad purpose of the CCNS "to preserve the seashore character of the [NSP] by prohibiting significant environmental changes." Finally, the board relied on the stated objective of zoning regulation within the CCNS, and therefore the NSP, "to preserve the seashore character of the area by appropriate restrictions or prohibitions upon the . . . cutting of timber. . . or other uses which would detract from the natural or traditional seashore scene." 36 C.F.R. § 27.3(d).

We agree with the motion judge that the board's interpretation of the term "timber" was well reasoned, supported by facts and the language of the bylaw, and consistent with the regulations governing the activities of the NSP and the CCNS. See Pinecroft, 101 Mass. App. Ct. at 128. On the other hand, the interpretation of "timber" urged by the plaintiff would permit the vast majority of trees in the NSP to be clear cut without restriction simply because they are not suitable for commercial use, which would undermine the express objectives of the NSP. We therefore conclude that there was a rational basis for the board to affirm the first order based on its

6

determination that the word "timber" as used in section 6.9 included the scrub pine trees removed by the plaintiff.

3. <u>Requirement of a special permit</u>. In relevant part, bylaw section 8.2, "Permits Required," provides that "no use of land . . . shall be begun or changed without a permit having been issued." Bylaw section 6.1.1 specifically allows for the "alteration or extension" of a nonconforming cottage colony use by "special permit" if the use is limited to the "parcels employed at the time the use was made non-conforming." The process for obtaining such a special permit is laid out in bylaw section 8.4.2. Within the NSP, special permits are subject to additional criteria in bylaw section 6.24, including a requirement that "landscape shall be preserved in its natural state insofar as practical."

The plaintiff argues that private parking was a permitted land use in all Wellfleet zoning districts and his tree clearing to create additional parking for his cottage colony was an accessory to a preexisting nonconforming use of his property and thus did not require a permit.[2] The board did not dispute that

_____

[2] We disagree with the plaintiff's contention that the judge erroneously framed the issue as "whether cutting trees was an extension of a nonconforming use." The judge's decision stated, "The question is whether cutting down trees <u>to create additional parking and a driveway</u> constitutes an alteration or extension of a nonconforming cottage colony use under Section

the plaintiff's cottage colony was a preexisting nonconforming use of land in the NSP and thereby exempt from the bylaw's prohibition against cottage colonies. See G. L. c. 40A, § 6. The board also agreed with the plaintiff that private parking was a permitted use of any real property in the town, and private parking for the cottage colony was an allowed accessory use of the plaintiff's property. However, as the board has noted, without information about the plaintiff's plan it was "impossible" for it to weigh whether the additional parking and driveway on the property would be incidental to the permitted cottage colony use or an expansion requiring a permit.

The expansion of use of a property that has a preexisting nonconforming use is not inherently an expansion of the nonconformity. See Maselbas v. Zoning Bd. of Appeals of North Attleborough, 45 Mass. App. Ct. 54, 56-57 (1998) (addition of detached garage not impermissible extension of preexisting nonconforming two-family residence where new structure did not expand home's footprint or extend its nonconforming use). Whether the plaintiff's creation of new parking and a driveway in this case "increase[ed] the nonconforming nature" of his existing cottage colony and allowed parking, and thus required a

6.1.1" (emphasis added). In any event, we review the board's decision de novo.

8

special permit is a fact-driven inquiry. See Henry v. Board of Appeals of Dunstable, 418 Mass. 841, 844-845 (1994) (determining whether activity was incidental to permitted use is fact-dependent inquiry comparing net effect of incidental use to primary use and evaluating reasonableness of relationship between incidental and primary uses). The board could not make that factual determination unless the plaintiff provided information through the permit application process about the number, nature, and extent of any additional parking spaces he sought to create by cutting down trees on his property. We thus conclude that the board's decision to affirm the second order was not arbitrary or capricious to the extent it required the plaintiff to apply for a permit as required by the process set

out in the bylaws.[3]  See Stevens v. Zoning Bd. of Appeals of Bourne, 97 Mass. App. Ct. 713, 717 (2020).

Judgment affirmed.

By the Court (Grant, Brennan & Smyth, JJ.[4]),

*[signature: Paul Little]*

Clerk

Entered:  December 4, 2025.

---

[3] We agree with the judge, and neither party argues to the contrary on appeal, that it was error for the board to find that the plaintiff's cottage colony already had adequate parking and that his effort to create additional parking and a driveway was forbidden because "it is not compatible with the National Seashore Zoning Standards, [36 C.F.R. § 27.1(b)(1) and § 27.3]."

[4] The panelists are listed in order of seniority.